IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**VICTORINA MATA,**

        Plaintiff,

    v.

**OREGON HEALTH AUTHORITY, an**
**agency of the State of Oregon, OREGON**
**DEPARTMENT OF HUMAN SERVICES**
an agency of the State of Oregon, **CATHLEEN**
**KAUFMANN, PATRICIA WENTZ,**
**BEVIN HANSELL, and BRUCE GOLDBERG,**

        Defendants.

**Civ. No. 6:13-cv-485-TC**


**OPINION** and **ORDER**

---

MCSHANE, Judge:

Magistrate Judge Thomas M. Coffin filed a Findings and Recommendation (ECF No. 79)

recommending that defendants' motion for summary judgment (ECF No. 65) should be granted,

resulting in the dismissal of plaintiff's action. The plaintiff filed objections to Judge Coffin's

Findings (ECF No. 83), and the defendants filed a response to plaintiff's objection (ECF No. 85).

1 – OPINION AND ORDER

The matter is now before this court. *See* 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72.

I reviewed the legal principles *de novo*. *United States v. Bernhardt*, 840 F.2d 1441, 1445 (9th

Cir. 1998).  For the following reasons, I find error and reject the Findings and Recommendation.

Accordingly, defendants' motion for summary judgment (ECF No. 65) is DENIED in part and

GRANTED in part, and this case shall be set for trial after a new Scheduling Order has been

agreed to by the parties or set by the Court.

## FACTUAL BACKGROUND

The factual background of this case has already been laid out in Judge Coffin's two

previous Findings & Recommendations (ECF No. 32 and 79), and this Court will try not to

belabor the point too much in the following brief rendition of events.

Plaintiff Victorina Mata began work as a public affairs specialist (PAS 3) in August of

2009 for OHA and DHS to promote the Healthy Kids program.  Plaintiff alleges that the

individual defendants supervised her in their following capacities: Defendant Kaufman as the

OHA administrator of the Office of Healthy Kids and/or director of OHA's transformation

center.  Defendant Wentz as the manager of the OHA's communications department.  And

defendant Hansell as Kaufman's subordinate and the OHA's Healthy Kids deputy administrator.

The Healthy Kids Program was funded by the Oregon Legislative Assembly in 2009 to

expand insurance enrollment for Oregon children up to 300% of the federal poverty level and

sought to enroll 95% of the children in the State of Oregon in health insurance.  Through the

program, federal funds would cover 60-70 percent of each eligible child depending on their

individual qualifications. These federal funds came as matching funds based upon the number of

children enrolled through the program.

2 – OPINION AND ORDER

In approximately November of 2009, plaintiff began questioning the number of children without insurance being reported by OHA to the public and to the federal government for funding. Plaintiff asserts that as soon as she began questioning the numbers she became subject to harassment and adverse employment actions until her employment ended in April of 2012. The defendants claim the plaintiff was simply laid-off due to budget cuts by the Oregon State Legislature. The plaintiff claims her layoff was a pretextual act of retaliation for her whistleblowing and was not necessitated by the legislature's funding cuts.

Plaintiff claims that her acts of whistleblowing included questioning the program's enrollment numbers and voicing concerns over other issues including irregular accounting, excess grants, and no bid contracts. Plaintiff alleges that she reasonably believed Defendants' enrollment misrepresentations and accounting irregularities were violations of Federal or Oregon law, rule or regulation. Plaintiff further alleges that these misrepresentations and irregularities evidenced mismanagement, and/or were an abuse of the Agency's authority to use taxpayer money in ways the Agency was not entitled. (ECF No. 42 at p.5).

Plaintiff alleges that beginning in September 2010, she made these complaints and concerns known to her managers and also reported them to other state agencies including the Oregon Secretary of State's Audit Division, the Oregon Department of Justice' Fraud Unit, individual State legislators, and to the media. (ECF No. 42 at p.5). In February 2012, plaintiff filed a formal Complaint with the Oregon Bureau of Labor & Industries (BOLI) and the United States Equal Employment Opportunity Commission (EEOC).

As noted in Judge Coffin's Findings & Recommendation, The Oregon Secretary of State's Audit Division initiated an audit that began in October 2010 and concluded in September 2011, which found that in fiscal years 2009 and 2010, Oregon received $4.6 million more than

3 – OPINION AND ORDER

warranted in bonuses from the federal government for erroneous increases in medicaid enrollment of children. While the audit did not uncover any intentional fraud, it did find error in the process OHA used to apply for the bonus awards and it noted some areas where controls over advertising and expenditures could be improved. The Oregon Department of Justice also conducted a related investigation in 2010-2011. (ECF No. 79 at p.5). It is undisputed that the plaintiff was at least partially responsible for the audit and investigations being initiated. It is also undisputed that defendants Wentz and Kaufman discussed whether or not plaintiff was the source of information that lead to the initiation of the audit and investigations. (*See* Deposition of Patricia Wentz at p. 169).

## PROCEDURAL BACKGROUND

Plaintiff Mata initiated this action in the Circuit Court of the State of Oregon for the County of Marion on January 31, 2013 (*see* Marion County Circuit Court Case No. 13C11391). Defendants removed the action to this court on March 21, 2013 (ECF No. 1).

The initial complaint (ECF No. 1) alleged claims for: (1) violations of Oregon's whistleblowing laws against plaintiff's former employer defendants Oregon Health Authority (OHA) and Oregon Department of Human services (DHS); (2) race and national origin discrimination under Title VII against defendants OHA and DHS; (3) race and national origin discrimination under state law against defendants OHA and DHS; and (4) violation of due process, freedom of speech and equal protection under 42 U.S.C. § 1983 against defendants Cathleen Kaufman, Patricia Wentz, Bruce Goldberg, and Bevin Hansell.

Plaintiff dropped her second and third claims (race and national origin discrimination) in her First Amended Complaint (ECF No. 28). Plaintiff's due process and equal protection claims

4 – OPINION AND ORDER

were dismissed with prejudice in Judge Coffin's Findings & Recommendation on defendants'
Motion to Dismiss (ECF No. 32), which this Court adopted in its entirety (ECF No. 37).

Dr. Bruce Goldberg was also dismissed as a defendant through Judge Coffin's Findings
& Recommendation on defendants' Motion to Dismiss (ECF No. 32), which this Court adopted
(ECF No. 37), after plaintiff failed to allege any section 1983 claims against him in plaintiff's
Second Amended Complaint (ECF No. 42).`

Plaintiff's remaining claims at issue here are: (1) violations of Oregon's state
whistleblowing laws against defendants OHA and DHS, pursuant to ORS §§ 659A.199,
659A.203, 659A.230; and (2) violation of freedom of speech against defendants Kaufman,
Wentz and Hansell, pursuant to 42 U.S.C. § 1983.

## STANDARD OF REVIEW

The court must grant summary judgment if there are no genuine issues of material fact
and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue
of fact is genuine "if the evidence is such that a reasonably jury could return a verdict for the
nonmoving party." *Villiarimo v. Aloha Island Air., Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)
(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court should view the
evidence in the light most favorable to the non-moving party. *Allen v. City of Los Angeles*, 66
F.3d 1052, 1056 (9th Cir. 1995) (citing *Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127,
1130 (9th Cir. 1994)). If the moving party shows that there are no genuine issues of material
fact, the nonmoving party must go beyond the pleadings and designate facts showing an issue for
trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see* Fed. R. Civ. P (56)(c).

# DISCUSSION

Claim 1 – Whistleblowing (ORS §§ 659A.199, 659A.203, and 659A.230):

Plaintiff's 1st claim for relief is against defendants DHS and OHA for violations of Oregon's state whistleblowing laws, pursuant to ORS §§ 659A.199 (Count 1), 659A.203 (Count 2), and 659A.230 (Count 3).

As an initial matter, I agree that the claims against defendant DHS must be dismissed because DHS split from OHA in 2011 and plaintiff no longer worked for DHS when her employment ended (ECF No. 79 p. 7). This finding also seems to be conceded by plaintiff through lack of argument in plaintiff's Objections (ECF No. 83). Therefore, all claims against DHS are dismissed.

ORS § 659A.199 prohibits an employer from discharging, demoting, suspending, or in any manner discriminating or retaliating against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation.

ORS § 659A.203 prevents, among other things, employers from prohibiting employees from discussing, in response to an official request, either specifically or generally with legislative members, or elected auditors or threatening disciplinary action for disclosing violations of law, or gross mismanagement.

ORS § 659A.230 prohibits employers from discharging, demoting, suspending or in any manner discriminating or retaliating against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the

6 – OPINION AND ORDER

employee has in good faith reported criminal activity by any person, has in good faith caused a complainant's information or complaint to be filed against any person, has in good faith cooperated with any law enforcement agency conducting a criminal investigation, has in good faith brought a civil proceeding against an employer or has testified in good faith at a civil proceeding or criminal trial.

To establish a retaliation case under Oregon's whistleblowing statutes, Plaintiff must show that (1) she was engaging in a protected activity, (2) she suffered an adverse employment decision, and (3) there was a causal link between the protected activity and the adverse employment decision." *Ruggles v. Cal. Polytechnic State Univ.,* 797 F.2d 782, 785 (9th Cir. 1986).

As to the first element, I agree with Judge Coffin's findings that plaintiff has presented evidence to support the conclusion that she was engaged in a protected activity when she made internal and external reports of wrongdoing based on an objectively reasonable belief that a violation of law had occurred. (ECF No. 79 at p. 10). I further agree with Judge Coffin's finding that "The fact that plaintiff was laid-off does of course present an adverse employment decision." (ECF No. 79 at p. 10). But I disagree and reject Judge Coffin's finding that, "Ultimately, however, plaintiff cannot maintain any whistleblower claims as she has not suffered actionable retaliation...[because] the decision [to lay-off plaintiff] resulted from the Legislature's decision to cut funding for the marketing program... Thus, there is no link between plaintiff's alleged protected activity and the decision to lay her off." (ECF No. 79 at pp. 10-11).

Whether or not the state legislature cut the *entire* marketing budget for the Healthy Kids program remains a genuine issue of material fact and based on the standard of review for

7 – OPINION AND ORDER

summary judgment as described above, the Court should view evidence in the light most favorable to the non-moving party. In this case, plaintiff has presented evidence through the committee notes of SB5701A, plaintiff's deposition, and defendant Kaufmann's deposition, that only $1 million of the roughly $5.5 million marketing budget was cut, and that defendant Kaufmann had the discretion to decide what and/or who to cut. Plaintiff further argues that "the budget also had carryover funding" that could have protected positions from immediate cuts. (ECF No. 83 at pp. 10-12).

The fact that the defendants laid-off the two people they admittedly suspected of leaking information to state agencies and the press is enough for a reasonable juror to potentially draw a link between the plaintiff's protected activities and the adverse employment decision to constructively terminate her using a layoff as pretext.

I also reject Judge Coffin's finding that "an obvious means to termination was present" (ECF No. 79 p. 11) (and the link between plaintiff's protected activity and defendants' adverse employment action thus destroyed) when in September 2010 plaintiff brought a ceremonial tomahawk to work and allegedly threatened to harm her coworkers with it. But this incident took place *before* plaintiff went to the Secretary of State, the DOJ, or the media. It was investigated and plaintiff was not fired, demoted, or docked pay. Nor did she face any criminal charges, which would seemingly have been appropriate should any of her "threats" been deemed actual or serious. As plaintiff argues in her Objections (ECF No. 83 at pp. 20-21), "this particular argument [regarding the tomahawk incident] was not raised until Defendants' Reply brief to which Plaintiff could not respond... and Plaintiff has evidence from Richard Acevedo's deposition showing that he had seen other state officials bring historical artifacts (an actual

firearm) to work and openly display them. *See* Dec of Tyler Smith Ex. 13, (Dep. of Richard Acevedo Add.) pp. 2:11-25-3:1-11."

Further, it seems undisputed that the tomahawk was "ceremonial" and that plaintiff is an Alaska Native and an enrolled member of the Central Council of the Tlingit & Haida Indians of Alaska. (Decl. of Mata: ECF No. 74-1 at p. 2). Whether or not the tomahawk was functional and/or dangerous and whether or not plaintiff made credible threats to harm her coworkers with it is a question of fact that defendants are welcome to raise at trial, but this incident was not an "obvious means to termination" and does not disprove any possible link between plaintiff's protected activity and defendants' adverse employment action. Therefore, plaintiff's retaliation claims based on Oregon's whistleblowing statutes survive summary judgment.

I am in agreement with Judge Coffin that plaintiff's state law based whistleblowing and retaliation claims are limited to her allegation of constructive termination as the only incident that could be seen as constituting an actionable adverse employment action. In other words, I agree that the other alleged acts of retaliation such as moving plaintiff's desk or excluding her from meetings do not rise to the level of adverse employment actions worthy of separate and additional retaliation claims. (ECF No. 79 p. 7). But I am in agreement with the plaintiff's analysis that these prior acts can be introduced at trial as relevant background evidence in support of their claim. *Amtrak v. Morgan*, 536 U.S. 101, 113 (2002).

## Claim 2 – First Amendment Freedom of Speech (42 U.S.C. § 1983):

Plaintiff's 2nd claim for relief is against individual defendants Kaufman, Wentz, and Hansell, for violation of plaintiff's freedom of speech pursuant to 42 U.S.C. § 1983. As Judge

9 – OPINION AND ORDER

Coffin correctly states when framing the elements required to establish a First Amendment

claim, the court considers the following five factors:

(1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a
private citizen or public employee; (3) whether the plaintiffs protected speech was a substantial
or motivating factor in the adverse employment action; (4) whether the state had an adequate
justification for treating the employee differently from other members of the general public; and
(5) whether the state would have taken the adverse employment action even absent the protected
speech. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). (ECF No. 79 at pp. 11-12).

As an initial matter here, this Court finds that there is no support found in the record for

the idea that individual defendant Bevin Hansell knew plaintiff was blowing the whistle

externally. Therefore, all claims against Hansell are dismissed. Defendants Kaufman and Wentz

are another matter. As previously discussed, plaintiff has presented a genuine question of

material fact for a jury to decide as to whether defendants Kaufman and Wentz acted in

retaliation to plaintiff's protected speech.

Judge Coffin dismissed plaintiff's First Amendment claims based on the same premise

used for dismissing the whistleblowing claims. Namely, that the plaintiff did not suffer an

actionable adverse employment action. (ECF No. 79 at p. 12). This Court rejects that finding

for the same reason it did so in regards to the whistleblowing claims: plaintiff has shown enough

evidence to suggest that a genuine issue of material fact exists as to whether or not the legislature

cut the *entire* marketing budget for the Healthy Kids program, and whether or not the defendants

had discretion in how and when to make those budget cuts. *See supra* pp. 7-8.

Plaintiff's acts of reporting no-bid contracts and possible wrongdoing and fraud to the

Secretary of State, DOJ, and the media, as well as leaking what she believed to be wrongfully

withheld public records to the media, were certainly not a part of her job duties and thus

constituted private speech. It follows that if the plaintiff's allegations are true, the defendants

10 – OPINION AND ORDER

certainly would not have taken the adverse employment action of constructively terminating the plaintiff absent her engaging in her speech that she made externally as a private citizen. Therefore, plaintiff has satisfied all the threshold elements required for stating a First Amendment freedom of speech claim pursuant to 42 U.S.C. § 1983 against defendants Kaufman and Wentz.

## After-Acquired Evidence:

The Supreme Court has rejected the unclean hands defense "where a private suit serves important public purposes." *McKennon v. Nashville Banner Publ. Co.,* 513 U.S. 352, 361 (1995). Similarly, in *O'Day v. McDonnell Douglas Helicopter Co.*, the Court stated that "if an employer discharges an employee for a discriminatory reason, later discovered evidence that the employee could have been discharged for a legitimate reason does not immunize the employer from liability." *O'Day v. McDonnell Douglas Helicopter Co.*, 79 F.3d 756, 761 (1996).

The defendants attempted use of this doctrine at the summary judgment stage of this case is premature because it is not a complete bar to recovery and defendants have not yet proven by preponderance of the evidence that it would have fired the plaintiff for her misconduct. Genuine issues of material fact still exist and need to be determined later at trial. As cited by Judge Coffin in his findings, "the proper boundaries of remedial relief must be addressed by the judicial system in the ordinary course of further decisions, for the factual permutations and the equitable considerations they raise will vary from case to case." *Rivera v. NIBCO, Inc.,* 364 F.3d 1057, 1071 (9th Cir. Cal. 2004). Therefore, any limits to remedies should only be determined by the Court after a trial has settled all the issues of material fact.

11 – OPINION AND ORDER

**Qualified Immunity:**

Whether a government official is entitled to qualified immunity involves a two-step inquiry: (1) Was the law governing the official's conduct clearly established? and (2) Given a clearly established standard, could a reasonable official believe that his or her conduct was lawful? *Act Up!/Portland v. Bagley*, 988 F.2d at 873 (9th Cir 1993). Here, a deprivation of a constitutional right that was clearly established and known at the time of the defendants' alleged misconduct has been alleged by the plaintiff. And as plaintiff correctly states, when genuine issues of fact remain, the case must proceed to trial, because whether or not the defendants did indeed violate the established constitutional rights of the Plaintiff is an issue to be determined by the trier of fact. (ECF No. 83 at pp. 28-30).

## CONCLUSION

THEREFORE, IT IS HEREBY ORDERED that, Magistrate Judge Coffin's Findings and Recommendation (ECF No. 79) is REJECTED. Defendants' motion for summary judgment (ECF No. 65) is DENIED in part and GRANTED in part as follows:

(1) DHS and Bevin Hansell are dismissed as defendants in this action.

(2) Plaintiff's state law claims for whistleblowing and retaliation pursuant to ORS §§ 659A.199, 659A.203, and 659A.230 against defendant OHA, and her 1st Amendment freedom of speech claims pursuant to 42 U.S.C. § 1983 against individual defendants Kaufman and Wentz remain viable, and this case shall be set for trial after a new Scheduling Order has been agreed to by the parties or set by the Court.

IT IS SO ORDERED.


DATED this 31st day of August, 2015.


_____
**Michael J. McShane**
**United States District Judge**